DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

GEORGE MASSAUA,

Appellant,

v.

CARMINE CERVELLI; UMBERTO'S OF PALM HARBOR,
INC.; and MARCUS ADRIAN VISOIU,

Appellees.

STEPHANIE L. ALLEN,

Appellant,

v.

CARMINE CERVELLI; UMBERTO'S OF PALM HARBOR,
INC.; and MARCUS ADRIAN VISOIU,

Appellees.

Nos. 2D2024-2621, 2D2024-2622
CONSOLIDATED
_____

July 8, 2026

Appeal from the Circuit Court for Pinellas County; Patricia Ann
Muscarella, Judge.

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville; and Benjamin
James Stevenson of Stevenson Legal, PLLC, Pensacola Beach, for
Appellants.

Joye B. Walford, Michael C. Clarke, and Paz A. Garcia Griego of Kubicki Draper, P.A., Tampa, for Appellees.

SLEET, Judge.

George Massaua and Stephanie Allen appeal from the final summary judgment entered against them in their individual negligence actions brought against Carmine Cervelli; Umberto's of Palm Harbor, Inc., d/b/a Casa Ludovico; and Mairus Adrian Visoiu.[1]  Massaua and Allen did not know each other in late 2016 when each independently dined at Casa Ludovico, an upscale restaurant where Visoiu worked as a server.  They allege that during that timeframe, Visoiu was sick with an infectious disease that he ultimately transmitted to each of them and that Cervelli, Umberto's, and Visoiu are liable because they knew or reasonably should have known of Visoiu's illness and failed to prevent him from having contact with Casa Ludovico's customers.

On appeal, Massaua and Allen raise no arguments challenging the trial court's entry of summary judgment in favor of Visoiu.  Accordingly, we affirm the final judgment as it pertains to him.[2]  But the record contains evidence that Visoiu visibly suffered from a flu-like cough for several months and that Cervelli and Umberto's reasonably should have known that he was sick with a contagious disease and that allowing him

---

[1] The trial court consolidated the underlying cases "for discovery, hearing on Defendants' Motion for Summary Judgment, Non-Binding [sic] Arbitration, and potential trial on liability" and issued one final judgment applicable to both plaintiffs.  Massaua and Allen each filed their own appeal, but we consolidate their appeals for the purpose of this opinion.

[2] See D.H. v. Adept Cmty. Servs., Inc., 271 So. 3d 870, 880 (Fla. 2018) ("A trial court's ruling is treated as correct except insofar as an appellant raises claims of error.").

to continue to interact with customers and their food created a zone of risk that could harm patrons. Additionally, the record contains evidence from which a jury could conclude that Massaua and Allen contracted tuberculosis at Casa Ludovico. Accordingly, genuine issues of material fact precluding summary judgment exist, and we must reverse as to Cervelli and Umberto's.

Cervelli is a part-owner and the manager of Casa Ludovico.[3] Near the end of September 2016, while working as a server there, Visoiu visited Urgent Care of Palm Harbor because he was "feeling cold symptoms or a flu." He was prescribed antibiotics. In late October, he saw a dentist for a tooth extraction and was prescribed a second round of antibiotics. He stopped working at Casa Ludovico in January 2017 due to a dispute over tips. Then in March 2017, he returned to Urgent Care because he was "experience[ing] a little heavier symptoms . . . more itchy throat . . . and flu symptoms," including "night sweats and chills and . . . coughing." He testified at deposition that his cough had been "heavy" since "the middle of December." He described heavy coughing as "how you cough when you have a cold or flu." It was on this visit to Urgent Care that Visoiu was diagnosed with tuberculosis (TB).

Cervelli, however, testified at deposition that Visoiu did not appear sickly to him when Visoiu was working at Casa Ludovico and that he did not see Visoiu exhibit the specific symptoms Visoiu described having in October 2016. Cervelli further testified that if he had been aware that Visoiu had TB, "I wouldn't keep him because I didn't want to catch [TB] myself, or my employees, or my patrons, or anybody else."

---

[3] Our recitation of facts is based on the summary judgment evidence presented below, including discovery and deposition testimony. *See* Fla. R. Civ. P. 1.510(c)(1).

3

Kim Ford worked as a bartender and server at Casa Ludovico during the time that Visoiu worked there. She testified at deposition that Visoiu had a heavy cough for a while when he was employed there. Ford stated that Visoiu "was clearly unhealthy," that she remembered him complaining about "how he did not feel well," and that he appeared to be sickly "for weeks." Additionally, she stated that there were "some hostile . . . interactions between [Visoiu] and [Cervelli] regarding how he was feeling, how sick he was."[4] Ford overheard Visoiu talking to other employees about "the speculation of whether he had TB or not, whether he was sick. He was talking about his interaction with [Cervelli]." She also stated that Visoiu was "defending himself" and "felt like he was victimized" because "in his mind . . . it was all speculation." According to Ford, the tension between Visoiu and Cervelli "regarding his health where he was denying he was sick" lasted "a few weeks."

Visoiu, however, testified that he "[n]ever" talked to Cervelli about TB. About a week after he stopped working at Casa Ludovico, he began working at Currents, a restaurant in Tarpon Springs. During his employment at Currents, his heavy coughing and itchy throat continued, and he began "coughing up blood" and suffering from night sweats and chills.

Tracey Swade, the owner and manager of Currents, testified at deposition that she knew Visoiu and hired him without an interview because he had worked there previously. Swade testified that he worked at Currents for "six weeks or less." She stated, "It was a very short term. I'm going to go with six weeks maybe. And I'm going on a heavy side there." Swade testified that Visoiu stopped working there because "[h]e didn't appear well, and I told him not to come back to work until he had

---

[4] *See* § 90.803(18), Fla. Stat. (2024).

a doctor's note." Asked when she first noticed Visoiu's illness, she responded, "It was a couple of -- maybe three weeks after -- a few weeks after he started." But later, when counsel for Massaua and Allen sought to clarify whether that statement was "just an estimate as to when you noticed that he appeared sickly," she answered: "It was a few days that we noticed. It wasn't a few weeks that we noticed." The only symptom Swade witnessed was a heavy cough, but she added that "it was just obvious" and that it "made [her] uncomfortable." She testified that "when it continued for a few days, that's when we made the decision" to send Visoiu home.

In March 2017, Visoiu tested positive for TB, and the Florida Department of Health (FDOH) began an investigation. Ford testified that once it was known that Visoiu had TB, Cervelli instructed Casa Ludovico employees not to tell anyone. Ultimately, a few employees of both Casa Ludovico and Currents tested positive for TB.

Allen dined at Casa Ludovico in November 2016; Massaua dined there in December 2016. Both were diagnosed with TB in 2018. They each were contacted by FDOH and asked about their movements and interactions prior to their diagnoses. Massaua testified, "I was rattling off a few places. I mentioned Casa Ludovico[,] and the lady immediately cut me off and said, that's fine. We don't need to ask you anymore." When he went to his first in-person interview at FDOH, the "[s]ame thing happened. . . . That person down there . . . asked me to confirm did I patronize myself at Casa Ludovico." Massaua further testified that Kevin Whitlow, the FDOH disease intervention specialist who visited him daily during treatment to ensure that he was taking his medication, also

indicated that Casa Ludovico was where Massaua had contracted TB because his TB and TB diagnosed in a waiter there was a "DNA match."[5]

Allen testified at deposition that during her first interview with an FDOH representative, she was asked where she would go in the area for a "nice dinner." She named a couple of restaurants, including Casa Ludovico. Allen then testified that the FDOH representative asked, "When you ate at Casa Ludovico, do you remember what the waiter looked like that waited on you?" The interviewer then gave a description of a "dark complected" male that matched Visoiu. Allen also testified that Whitlow "was very certain that I got [TB] from Casa Ludovico and that I matched Patient Zero's genotype."

For his part, Whitlow testified that he would not have told anyone the source of the TB. As to his knowledge of TB, Whitlow testified that he had worked in the TB division of FDOH for three years. He explained that common TB symptoms include *flu-like symptoms, such as cough*, sneezing, itchy throat, chills, bloody sputum, night sweats, and pulmonary issues, but according to Whitlow, not everyone infected with TB experiences all these symptoms.

Additionally, Whitlow testified that as part of the initial FDOH investigation, he went to Casa Ludovico to interview employees and inspect the premises. Initially, Cervelli refused to allow the inspection. Whitlow testified that Cervelli "was embarrassed and didn't want his customers to think that something was going wrong" and that it took Cervelli "a couple weeks" before he cooperated with the FDOH investigation.

---

[5] This testimony and Allen's similar testimony were offered to explain why the investigation led to Casa Ludovico and why they brought their causes of action. It was not offered for the truth of the matter asserted. *See* §§ 90.801(1)(b), .803(3).

Massaua and Allen filed individual actions in 2021, each naming as defendants Cervelli, Umberto's, and Visoiu. Their second amended complaints, the operative complaints, each alleged three counts: a vicarious liability count against Umberto's and negligent conduct counts against Cervelli and Visoiu. Massaua and Allen alleged that Visoiu had TB while working at Casa Ludovico and that Cervelli, Umberto's, and Visoiu all "knew or reasonably should have known" that Visoiu "had been and was very sick and likely contagious" and yet allowed him to continue interacting with members of the public, thereby exposing members of the public to "his illness."

On July 15, 2024, the three named defendants filed a joint motion for summary judgment, arguing that Massaua and Allen could not establish that they were exposed to TB at Casa Ludovico during the time that Visoiu worked there; that Cervelli, Umberto's, and Visoiu knew or reasonably should have known that Visoiu was infected with TB during that time; or that there was a proximal connection between any exposure at Casa Luduvico and Massaua's and Allen's subsequent TB diagnoses.

In opposition to the summary judgment motion, Massaua and Allen relied on the affidavit of Dr. Kunchok Dorjee, an epidemiologist and assistant professor of public health at Johns Hopkins University School of Medicine specializing in the transmission of infectious diseases. Based upon his review of the pleadings, depositions, and Massaua's and Allen's FDOH medical records, Dr. Dorjee opined, "with a reasonable degree of medical certainty," that Visoiu first likely developed symptoms of active TB in September 2016 when he began suffering flu-like symptoms and was prescribed antibiotics at Urgent Care and that Massaua and Allen contracted active TB because of their exposure to Visoiu at Casa Ludovico. Based upon the timeline provided by the

7

testimony of Visoiu's colleagues, Dr. Dorjee opined that Visoiu would have had excessive coughing and appeared to be sick to such a degree that Cervelli and Umberto's would have known or reasonably should have known that Visoiu was sick and that he should not have been allowed to interact with the public until he was cleared to work by a medical professional.

Following a hearing, the trial court granted the motion for summary judgment. In its written order, the court pointed out that "in terms of premises liability based on negligent transmission of an infectious disease, the duty element requires actual or constructive knowledge that an infectious disease is present on the premises." The court then framed this knowledge element narrowly, stating that Massaua and Allen had to establish actual or constructive knowledge that Visoiu was infected with TB specifically—as opposed to any contagious disease. The court determined that even "[a]ssuming that [Visoiu] had a 'heavy cough' at Casa Ludovico, there is still no basis for concluding that it indicated anything more than the presence of a cold or even the flu."

According to the trial court, Dr. Dorjee's affidavit did not create an issue of material fact that would preclude summary judgment because "Dr. Dorjee did not state that Defendants knew or should have known that [Visoiu] had *TB*" specifically but rather only "states that they should have known that [Visoiu] 'was sick.' " The court concluded that Massaua and Allen's evidence established "at most" that Visoiu had cold or flu symptoms when he worked at Casa Ludovico and therefore was "insufficient in itself to establish constructive knowledge of a TB outbreak." The court further concluded that Massaua and Allen "failed to adduce evidence establishing that they contracted TB" from contact

8

with Visoiu at Casa Ludovico and that Dr. Dorjee's affidavit was insufficient to establish proximate causation because it was "conclusory and unsupported by a fact-based chain of reasoning." The trial court entered final summary judgment against Massaua and Allen, and they now maintain that such was error.

We review a trial court's order granting summary judgment de novo. *Barber v. Manatee Mem'l Hosp., Ltd. P'ship*, 388 So. 3d 279, 285 (Fla. 2d DCA 2024) (citing *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)).

> [T]he trial court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Accordingly, the initial burden is on the movant to establish the absence of any genuinely disputed material fact.

*Id.* (footnote omitted) (first quoting Fla. R. Civ. P. 1.510(a); then citing *Brevard County v. Waters Mark Dev. Enters.*, 350 So. 3d 395, 398 (Fla. 5th DCA 2022)). "If the movant does so, then the burden shifts to the [nonmoving] party to demonstrate that there are genuine factual disputes that preclude judgment as a matter of law." *Id.* (alteration in original) (quoting *Waters Mark Dev. Enters.*, 350 So. 3d at 398). But "[u]ntil the moving party has met [its initial] burden, the [nonmoving] party is not obliged to prove or disprove anything." *Baum v. Becker & Poliakoff, P.A.*, 351 So. 3d 185, 189 (Fla. 5th DCA 2022).

"[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). And "[w]e view the facts in the light most favorable to [the nonmoving party] and may not weigh the evidence or

9

make credibility determinations." *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs.*, 356 So. 3d 292, 297 (Fla. 2d DCA 2023).

In the instant case, Cervelli and Umberto's had the initial burden, as the moving parties, to show that the record lacked any evidence of negligence on their parts. "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Accordingly, "in a premises liability case, the plaintiff 'must show the defendant had actual or constructive notice of the dangerous condition on its premises.' " *Hu v. Hua*, 414 So. 3d 179, 185 (Fla. 4th DCA 2025) (quoting *Eckert Realty Corp. v. Strazzeri*, 396 So. 3d 220, 221 (Fla. 4th DCA 2024)).

On appeal, Massaua and Allen argue that Cervelli and Umberto's failed to meet their burden of establishing a lack of evidence of their negligence. They maintain that the trial court erroneously framed the knowledge element too narrowly, requiring evidence that Cervelli and Umberto's knew or reasonably should have known that Visoiu was sick with TB specifically as opposed to any infectious illness and thus came to the erroneous conclusion that it was undisputed that Cervelli and Umberto's had no knowledge the Visoiu was infected with TB. We agree with Massaua and Allen on each of these points.

## DUTY AND KNOWLEDGE

"[B]usinesses owe a duty of reasonable care to their invitees to maintain safe conditions." *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 13 (Fla. 2016); *see also Chavez v. McDonald's Rest. of Fla., Inc.*, 108 So. 3d 1124, 1125 (Fla. 5th DCA 2013) (stating that restaurant patrons, as business invitees, are "owed a duty of care"). This "reasonable care"

10

includes "maintaining [the] property in a reasonably safe condition" and "warn[ing] of concealed dangers that the [business ]owner knows about or should know about and 'which are unknown to the invitee and cannot be discovered by him through the exercise of due care.' " *Ruiz v. Wendy's Trucking, LLC*, 357 So. 3d 292, 301-02 (Fla. 2d DCA 2023) (quoting *Knight v. Waltman*, 774 So. 2d 731, 733 (Fla. 2d DCA 2000)). Thus whether Cervelli and Umberto's owed their patrons, including Massaua and Allen, a duty to prevent an employee infected with a contagious disease from having contact with them turns on whether Cervelli and Umberto's had actual or constructive knowledge of Visoiu's illness.

" 'Actual knowledge' of a dangerous condition exists when the business or one of its agents 'knows of or creates the dangerous condition.' " *Kincaid v. Walmart, Inc.*, 430 So. 3d 141, 148 (Fla. 4th DCA 2026) (quoting *Dolgen Corp., LLC v. Doty*, 383 So. 3d 864, 867 (Fla. 5th DCA 2024)). Here, we agree with the trial court that Cervelli and Umberto's demonstrated an absence of evidence of actual knowledge.

However, "[c]onstructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it." *Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 965 (Fla. 3d DCA 2018); *see also Hu*, 414 So. 3d at 185 ("A premises owner has constructive knowledge of a hazard when, if he exercised reasonable care, he would have known of the hazard." (quoting *Eckert Realty Corp.*, 396 So. 3d at 221)). Here, the record contains evidence from which a jury could conclude that Cervelli and Umberto's had constructive knowledge that Visoiu was sick prior to Allen's dining at Casa Ludovico in November 2016 and Massaua's dining there in December 2016 and that if Cervelli and Umberto's had exercised

11

ordinary care, they reasonably would have discovered the extent of Visoiu's illness and remedied the situation by preventing him from working until cleared by a medical professional.

Ford testified that Visoiu had a heavy cough, "was clearly unhealthy," complained about "how he did not feel well," and appeared to be sickly "for weeks." Visoiu's testimony established that he had flu symptoms, including a cough, starting in late September 2016 that lasted the entire time he worked at Casa Ludovico. Although he testified that the cough got worse in the middle of December, by then he had been suffering from a cough for two and half months. Although Cervelli testified that he was unaware that Visoiu was sick, based on the length of time that Visoiu suffered with the cough, had Cervelli exercised ordinary care, he should have been aware of the situation and remedied it. *See Khorran*, 251 So. 3d at 965. This is especially true in light of Ford's testimony that the Casa Ludovico staff was small in number.

Because the evidence established that Visoiu had a noticeable respiratory illness with conspicuous symptoms that lasted for almost three months, a jury could reasonably conclude that Cervelli and Umberto's knew or should have known that Visoiu's illness was serious enough that it could be harmful to customers and that they should have "taken action to remedy it." *See id.* This evidence therefore satisfies the duty element of Massaua's and Allen's negligence claims.

NATURE OF THE DANGER

Despite this evidence, the trial court concluded that summary judgment was proper because Massaua and Allen "have not adduced any evidence that [Cervelli and Umberto's] had actual or constructive knowledge that [Visoiu] had TB when he was working at Casa Ludovico." The court noted that "[a]t most, [Massaua and Allen] have presented

12

evidence establishing that [Visoiu] had cold or flu symptoms at the time." By so concluding, the trial court defined Cervelli and Umberto's duty to restaurant patrons too narrowly and merged the question of duty with the question of proximate cause.

"[F]oreseeability is relevant to the elements of both duty and proximate cause." *Chirillo v. Granicz*, 199 So. 3d 246, 249 (Fla. 2016) (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). But it relates to these elements "in different ways and to different ends." *McCain*, 593 So. 2d at 502. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a *general threat of harm* to others." *Id.* (emphasis added); *see also McKinley v. Gualtieri*, 338 So. 3d 429, 433 (Fla. 2d DCA 2022) ("Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a *generalized and foreseeable risk* of harming others." (emphasis added) (quoting *Est. of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 788-89 (Fla. 2d DCA 2010))); *Surloff v. Regions Bank*, 179 So. 3d 472, 475 (Fla. 4th DCA 2015) ("The 'polestar' for determining both the existence *and scope of a legal duty* is foreseeability.").

Accordingly, the trial court defined the scope of Cervelli and Umberto's duty too narrowly. The question is not whether Cervelli and Umberto's knew or reasonably should have known that Visoiu was infected with TB specifically; it is whether they knew or reasonably should have known that Visoiu was infected with a contagious disease. *Cf.* Fla. Admin. Code Ann. R. 64E-11.003(5)(a) (2016) ("No person while affected with *any disease in a communicable form* or . . . while afflicted with . . . *an acute respiratory infection*, can work in any area of a food service establishment in any capacity in which there is a likelihood of

13

such person contaminating food or food-contact surfaces . . . or transmitting disease to other individuals, and no person known or suspected of being affected with any such disease or condition can be employed in such an area or capacity." (emphasis added));[6] *Communicable disease*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/communicable%20disease (last visited May 18, 2026) ("an infectious disease (such as cholera, hepatitis, *influenza*, malaria, measles, or tuberculosis) that is transmissible by contact with infected individuals" (emphasis added)); *Influenza*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/influenza (last visited May 18, 2026) ("an acute, highly contagious, respiratory disease caused by any of three orthomyxoviruses").  The trial court failed to recognize that "the risk to be perceived defines the duty that must be undertaken." *Bartley Invs. Ltd. v. Menendez*, 427 So. 3d 92, 101 (Fla. 2d DCA 2025) (quoting *McCain*, 593 So. 2d at 503).

In misidentifying the scope of the duty—and determining that "at most" the evidence established that Visoiu had flu symptoms—the court ignored that influenza is a contagious disease that shares many symptoms with TB and erroneously concluded that the record did not contain evidence from which a jury could conclude that Cervelli and Umberto's had constructive knowledge of the "general threat of harm" to their patrons.  *See McCain*, 593 So. 2d at 503, 504 ("Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will

---

[6] We recognize that rule 64E11.005, renumbered as rule 64E11.003 in 2018, does not create a private cause of action in and of itself.  But it illustrates and reinforces that a restaurant employee affected with any infectious disease "create[s] a broader 'zone of risk' that poses a *general threat of harm* to others."  *See McCain*, 593 So. 2d at 504 (emphasis added).

recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989))).

PROXIMATE CAUSE

Massaua and Allen also argue on appeal that the trial court erred in concluding in its final judgment that they "have not shown that there is any record evidence creating a genuine issue of material fact that [Cervelli and Umberto's] actions were the proximate cause of [their] illnesses." We agree.

We first note that the trial court applied an incorrect standard on summary judgment requiring the nonmoving party to establish a genuine issue of fact. At summary judgment, "the initial burden is on the movant to establish the absence of any genuinely disputed material fact." *Barber,* 388 So. 3d at 285. Unless and until Cervelli and Umberto's met that burden, Massaua and Allen were "not obliged to prove or disprove anything." *See Baum,* 351 So. 3d at 189.

To meet their burden, Cervelli and Umberto's argued below that there is no admissible evidence that Massaua and Allen contracted TB as a result of their contact with Visoiu at Casa Ludovico. "The issue of proximate cause is generally a question of fact concerned with 'whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred.' " *Goldberg v. Fla. Power & Light Co.,* 899 So. 2d 1105, 1116 (Fla. 2005) (quoting *McCain,* 593 So. 2d at 502).

"[T]he causation element is more specific to the case and considers whether 'prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission

15

in question.' " *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 709-10 (Fla. 5th DCA 2024) (quoting *McCain*, 593 So. 2d at 503). "Unlike in the 'duty' context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve." *McCain*, 593 So. 2d at 504. "The judge is free to take this matter [(the determination of proximate cause)] from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference." *Chirillo*, 199 So. 3d at 252 (alteration in original) (quoting *McCain*, 593 So. 2d at 504). "Thus, where reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder." *McCain*, 593 So. 2d at 504.

We conclude that the evidence in the instant case creates a genuine issue of material fact as to whether Cervelli and Umberto's could reasonably foresee that allowing an ill server—who has been suffering from a cough for a lengthy period—to interact with restaurant patrons and their food would likely result in the patrons contracting the infectious disease.

As detailed above, Ford's and Visoiu's testimony established that Visoiu had an active cough the entire three-plus months that he worked at Casa Ludovico. Ford testified that Massaua was a regular at the restaurant, both Massaua and Allen testified that they each dined there within the last two months of 2016, and Whitlow testified that when FDOH did its investigation at Casa Ludovico in March 2017, other employees tested positive for TB.

Additionally, in his affidavit, Dr. Dorjee averred that he had reviewed Massaua's and Allen's FDOH medical records, as well as their

16

depositions and the depositions of Cervelli, Visoiu, Swade, Ford, and Whitlow. He believed, within a reasonable degree of medical certainty, that Visoiu had been infected with TB in late September 2016. He based that belief on the fact that the cough and flu-like symptoms that Visoiu testified he began experiencing at that time had not subsided and in fact had worsened despite Visoiu taking two rounds of antibiotics after first experiencing the symptoms. Dr. Dorjee further averred that based on his education, training, and experience and the "natural history of tuberculosis disease progression," as well as the timelines described in the affidavits and depositions, it was his opinion that Visoiu had symptomatic TB at the times Massaua and Allen dined at Casa Ludovico and that they contracted TB as a result of their exposures at Casa Ludovico.

This was enough to create a question of material fact as to proximate cause that should have survived summary judgment. "[I]t is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent." *McCain*, 593 So. 2d at 503 (citing Restatement (Second) of Torts § 435 (1965)).

WEIGHING THE EVIDENCE

Massaua and Allen also argue on appeal that the trial court impermissibly weighed the summary judgment evidence to conclude that a jury could not ultimately find in their favor. We agree.

When considering a motion for summary judgment, "[i]t is improper to consider either the weight of the conflicting evidence or the credibility of witnesses." *Lassiter v. Citizens Prop. Ins.*, 386 So. 3d 646, 651 (Fla. 2d DCA 2024) (quoting *Bernhardt v. Halikoytakis*, 95 So. 3d 1006, 1008-09 (Fla. 2d DCA 2012)); *see also Whitlow v. Tallahassee Mem'l HealthCare, Inc.,* 421 So. 3d 729, 736 (Fla. 1st DCA 2023) ("The function of the trial

17

court at the summary judgment stage is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' "). "[C]redibility determinations and weighing the evidence 'are jury functions, not those of a judge.' " *Lassiter*, 386 So. 3d at 651-52 (quoting *Garcia v. Sec. First Ins.*, 347 So. 3d 479, 482 (Fla. 5th DCA 2022)). "[A] motion for summary judgment is not a trial by affidavit or deposition." *Id.* at 652 (alteration in original) (quoting *Clampitt v. Wick*, 320 So. 3d 826, 833 (Fla. 2d DCA 2021)). Here, the trial court's final judgment is replete with instances wherein the court improperly weighed the testimony of the witnesses.

First, the court determined that there was an inconsistency in Ford's testimony because although she stated that Visoiu was visibly ill, she also testified that she did not believe that Cervelli would allow sick servers to work. The court then undertook to resolve this inconsistency by determining that she was credible when she said that Cervelli would not allow a sick employee to work but not credible when she said that Visoiu was visibly ill. This was error. "Competing material evidentiary showings are incapable of resolution on summary judgment." *Navarro v. Borges*, 388 So. 3d 1044, 1047 (Fla. 3d DCA 2024); *see also Lassiter*, 386 So. 3d at 651.

The trial court similarly rejected a clarification in the testimony of Swade, the owner of Currents. Swade first testified that she noticed that Visoiu was ill "a few weeks after he started," but she later clarified: "It was a few days that we noticed. It wasn't a few weeks that we noticed." Despite this testimony being very clear as to when Swade first noticed Visoiu's illness, the trial court disregarded it and fashioned its own interpretation of Swade's testimony. In the final judgment, the court stated:

18

> Swade testified that she noticed [Visoiu] had a heavy cough around three weeks after he started working at Currents. She testified that when he did not appear to be getting better, she asked him to leave. *This was three days after she noticed [Visoiu] was sick, not three days after he started working at Currents.*

(Emphasis added.) The trial court seemed to ignore Swade's clarifications that "[i]t was a few days that we noticed" and that "[i]t wasn't a few weeks that we noticed" to create the perception that Visoiu worked at Currents for several weeks before Swade noticed his illness. Furthermore, Swade's testimony that she noticed Visoiu was ill a few days after he started work is not inconsistent with her testimony that she asked him to leave a few days after that. In any event, it is improper for the trial court to weigh the evidence at the summary judgment stage. *See Lassiter*, 386 So. 3d at 651; *Navarro*, 388 So. 3d at 1047.

Finally, the trial court wholly discounted the affidavit of Dr. Dorjee, concluding that he "provided no factual support for his assumptions and no scientific explanations for his conclusions" despite the fact that Dr. Dorjee set forth the deposition testimony and medical records upon which he relied. But more egregiously, the court indicated that Dr. Dorjee's affidavit is contradicted by "medical professionals" who treated Visoiu at Urgent Care but did not suspect that Visoiu had TB. First, this is another instance in which the trial court improperly weighed the evidence. Second, our record does not contain any medical records from Urgent Care of Palm Harbor concerning the treatment of Visoiu to support the court's conclusion that such records would demonstrate the lack of a flu diagnosis and the absence of any other symptoms related to TB. Inexplicably, the court identified unprovided medical records to refute the affidavit of Dr. Dorjee and determine that his "conclusions are contradicted by the fact that the medical professionals who actually

19

treated [Visoiu's] symptoms did not suspect that he had TB and prescribed antibiotics."[7] This is clearly an attempt to weigh evidence—some of which is not even in the record.

## CONCLUSION

For the reasons discussed, we conclude that the trial court erred in entering final summary judgment in favor of Cervelli and Umberto's. Viewing the evidence in the light most favorable to Massaua and Allen, as the nonmoving parties, Cervelli and Umberto's did not satisfy their burden on summary judgment of establishing the absence of any genuine disputes of material fact. Accordingly, we reverse the trial court's order as to Cervelli and Umberto's. However, because no arguments have been raised on appeal challenging the entry of summary judgment as to Visoiu, we affirm the trial court's final summary judgment as to him.

Affirmed in part, reversed in part, and remanded.

KHOUZAM and SMITH, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.

---

[7] Summary judgment must be based upon record evidence, i.e., "materials in the record." Fla. R. Civ. P. 1.510(c)(1)(A), (B), (c)(3); *see also Uzzell v. Velocity Invs., LLC*, 410 So. 3d 1252, 1254 (Fla. 2d DCA 2025) (noting that on summary judgment, the trial court's and appellate court's roles are similar—to "examine the record to determine if there is 'any genuine issue of material fact' that precludes summary disposition for the movant").